IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
NO. 5:13-CV-315-BO

| | |
|---|---|
| JOHN B. LASCHKEWITSCH as administrator for the Estate of Ben Laschkewitsch,<br><br>    Plaintiff,<br><br>v.<br><br>LINCOLN LIFE AND ANNUITY DISTRIBUTORS, INC., d/b/a/ LINCOLN FINANCIAL GROUP, INC.,<br><br>    Defendant. | **ORDER** |

This matter is before the Court on parties' cross motions for summary judgment [DE 83 and 87], various motions to seal [DE 86, 100, 109], defendant's motion to exclude evidence [DE 96], and plaintiff's motion to exclude [DE 108]. All of the motions are now ripe for adjudication. For the following reasons, defendant's motions to seal are GRANTED, plaintiff's motion to seal is GRANTED IN PART and DENIED IN PART, defendant's motion to exclude is GRANTED, plaintiff's motion to exclude is DENIED, defendant's motion for summary judgment is GRANTED and plaintiff's motion for summary judgment is DENIED.

## BACKGROUND

This case arises from an insurance dispute involving multiple insurance companies, including defendant-counterclaimant, The Lincoln National Life Insurance Company ("Lincoln"). The dispute here is over a life insurance policy issued by Lincoln covering the life of Ben Laschkewitsch, plaintiff-counterdefendant's brother. The undisputed facts before this Court on the motions for summary judgment reveal defendant's scheme to profit off of the

illness and death of his brother, for his sole personal gain, to the tune of $3.9 million. The facts reveal that defendant contrived to acquire $3.9 million in potential life insurance payouts on the life of his brother who was terminally ill with Amyotrophic Lateral Sclerosis ("ALS"). It is clear that defendant was aware that his brother was suffering from ALS at the time he helped his brother to apply for life insurance and that he went to great lengths to falsify the information provided to various life insurance companies, including Lincoln. In the Lincoln application, Mr. Laschkewitsch lied about his brother's family medical history as well as his brother's medical condition and healthcare providers; he grossly misstated the amount of "in force" insurance on his brother's life; he misstated the status of pending life insurance applications; he lied to Lincoln in emails about withdrawing his pending applications; and he provided false information about his brother's employment and contact information. Further, Mr. Laschkewitsch submitted fraudulently altered medical records in which his brother's family history of ALS was carefully erased and replaced with an innocuous medical condition.

Based on Mr. Laschkewitsch's fraud, Lincoln issued an $800,000 life insurance policy on the life of his brother (the "Insured"). Within the two-year contestability period, the Insured died. John Laschkewitsch, as policy owner, agent, and beneficiary, made a claim for benefits. During the course of the investigation into the claim for benefits, Lincoln learned for the first time about the Insured's illness and John Laschkewitsch's moneymaking scheme. Lincoln then denied the claim for benefits and rescinded the policy.

Mr. Laschkewitsch then filed this action, suing Lincoln for denying his fraudulent claim. In response, Lincoln brought counterclaims seeking a remedy for the fraud perpetrated by Mr. Laschkewitsch. Mr. Laschkewitsch was also sued by another one of the insurance companies

2

caught up in his scheme, the ReliaStar Life Insurance Company. *See Reliastar Life Ins. Co. v. Laschkewitsch*, No. 5:13-CV-210 (hereinafter the "ReliaStar Litigation").

## DISCUSSION

I.     MOTIONS TO SEAL.

Local Rule 26.1(a)(1) requires that medical records not be open to inspection or copying by any persons except the parties and their attorneys. It further requires the filing of any such records to be accompanied by a motion to seal. Accordingly, defendant's motion to seal [DE 86] is granted. DE 84 and DE 85 are hereby sealed as they contain medical records or discuss medical records. Defendant's motion to seal [DE 100] is also granted. DE 97, DE 98, and DE 99 are hereby sealed as they contain medical records or discuss medical records. Plaintiff's motion to seal [DE 109] is granted in part and denied in part. The documents plaintiff seeks to seal are properly sealed as they contain medical records or discuss medical records. However, a motion to seal is not a vehicle to submit new evidence to the Court. Unlike defendant's motions to seal which refer to exhibits already submitted to the Court, plaintiff attempts to include additional exhibits as an attachment to his motion to seal. This will not be allowed and the Court will not consider the exhibits to DE 109. However, as they contain medical records or discuss medical records, the Court orders that they be permanently sealed. In addition, Exhibits B, C, D, E, and H of DE 89, DE 101, exhibits E and F of DE 101, DE 89-1, DE 89-2, DE 89-3, DE 89-4, and DE 89-5 are hereby sealed.

II.    MOTIONS TO EXCLUDE EVIDENCE.

Both defendant and plaintiff have filed motions to exclude evidence and unsupported allegations that they allege were present in supporting memorandums, responses and replies to

3

the parties' motions for summary judgment. Additionally plaintiff seeks to exclude defendants' expert witness, John Carreira.

    A. Defendant's Motion.

Lincoln objects to and requests that this Court disregard the following documents: (1) the "Affidavit of Trust" of Imelda Laschkewitsch [DE 89-2]; (2) the "Affidavit of John M. Laschkewitsch" [DE 89-4]; (3) the "Affidavit of ALS Facts & Figures" of Jerry Dawson [DE 89-5]; and several unsubstantiated statements made in plaintiff's memorandum of law in support of plaintiff's motion for summary judgment [DE 88].

Lincoln asks the Court to exclude the affidavit of Imelda Laschkewitsch, Ben Laschkewitsch's widow because she essentially recanted the portions of her affidavit that defendant relies on. Plaintiff attempts to explain away Imelda's recantation, but her deposition testimony is clearly in conflict with her affidavit. As the deposition testimony occurred after the affidavit was signed, the inconsistencies should be read in favor of the deposition testimony. Accordingly, the Court excludes Imelda's affidavit from consideration.

Lincoln also asks the Court to exclude the affidavit of John M. Laschkewitsch because it was not produced in response Lincoln's January 3, 2014 request for "[a]ll statements or affidavits taken or received by you or your representative from any person containing information or knowledge relating to the factual allegations raised in your Complaint." [DE 96-14]. Plaintiff responded on February 6, 2014 stating that he did not have any undisclosed materials in his possession. [DE 96-15]. However, based on the filings in the *ReliaStar* case, it is known that plaintiff had in his possession an "Affidavit of John M. Laschkewitsch" signed and dated January 5, 2011. [DE 99-6]. Plaintiff never produced this affidavit to Lincoln and therefore

cannot introduce it now. FED. R. CIV. P. 37(b)(2)(A)(ii). Accordingly the Court excludes John M. Laschkewitsch's affidavit.

Lincoln asks the Court to exclude the "Affidavit of ALS Facts & figures" of Jerry Dawson from consideration because Dawson is not a fact witness in the case and defendant is improperly attempting to use the affidavit as expert evidence when Dawson was not designated as an expert witness.[1] Plaintiff's reasoning for Dawson not being a designated expert – that Dawson did not want to be an expert – is of no consequence here. Further the fact that Dawson's affidavit contains restatements from the National ALS Association's website and not personal opinions is of no consequence. There are rules of evidence that guide parties in submitting evidence to the Court and those rules must be complied with. If defendant wanted the information in Dawson's affidavit to be considered by the Court, defendant should have designated Dawson an expert. This was not done, so the Court excludes the Dawson affidavit from consideration.

Finally, Lincoln asks the Court to exclude all of defendant's unsupported allegations concerning what the insured believed or was told by doctors as well as various other allegations that are likewise unsupported by any proper summary judgment evidence. The Court will not consider any statements or arguments that are not supported by proper summary judgment evidence.

B. Plaintiff's Motion.

Plaintiff's motion to exclude is not his first meritless motion before the Court. [*See* ReliaStar Litigation DE 100; 130; 136]. However, plaintiff persists in lodging meritless allegations and complaints at every turn in this litigation. Here, plaintiff takes particular

---

[1] Plaintiff actually did designate Jerry Dawson as an expert witness on March 6, 2014 [DE 61], but when defendant sought dates from plaintiff when the expert witnesses could be made available, plaintiff responded by indicating that he did not intend to designate Mr. Dawson as an expert witness. *See* [DE 96-16].

5

objection to defendant's arguments contained in its supporting memoranda surrounding the pending motions for summary judgment. None of defendant's objections have any merit at all.

Therefore, the Court denies plaintiff's motion in its entirety here. The Court is able to separate defendant's arguments and conclusions from the supporting documents and facts. Plaintiff offers no meritorious challenge to the summary judgment evidence relied upon by defendant. Where plaintiff attacks the evidence, his attacks have no merit. Accordingly, plaintiff's motion is denied in its entirety.

III.     MOTIONS FOR SUMMARY JUDGMENT.

A motion for summary judgment cannot be granted unless there are no genuine issues of material fact for trial. FED. R. CIV. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). The moving party must demonstrate the lack of genuine issue of fact for trial and if that burden is met, the party opposing the motion must "go beyond the pleadings" and come forward with evidence of a genuine factual dispute. *Celotex*, 477 U.S. at 324. The Court must view the facts and the inferences drawn from the facts in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986). Conclusory allegations are insufficient to defeat a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986) ("[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment.") (emphasis in original). )."[T]here must be evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252. Therefore the inquiry asks whether reasonable jurors could find for the plaintiff by the preponderance of the evidence. *Id.* In order to defeat summary judgment, parties must provide "specific facts showing there is a genuine issue for trial." *Id.* at 249–50. The Court

6

will not consider "unsupported assertions," or "self-serving opinions without objective corroboration." *Evans v. Techs. Apps. & Serv. Co.*, 80 F.3d 954, 962 (4th Cir. 1996).

        A.      Defendant's Motion for Summary Judgment.

Defendant seeks summary judgment in its favor on all claims in this case including its counterclaims for fraud, violations of N.C. Gen. Stat. Chapter 75, misrepresentation, and breach of the producer agreement, and plaintiff's claims for breach of contract and for unfair settlement practices. Defendant also seeks treble damages and attorney's fees.

The facts in this case are lengthy and complicated and a recitation of them here is unnecessary as defendant's statement of the facts in its supporting memorandum is well-supported by evidence in the record and is wholly convincing as the true and correct version of events that lay the foundation for this case. [DE 85 at 3–21]. Accordingly the Court adopts this recitation of the facts as a general delineation of what occurred in this matter.

Plaintiff's fraud is beyond dispute in this case. The evidence before the Court demonstrates that plaintiff knew about his brother's ALS, knew that he was unemployed, and knew that he already had millions of dollars in life insurance coverage, with millions more pending, but intentionally failed to disclose, and affirmatively misrepresented, each of these material facts to Lincoln in his application for $800,000 more in coverage on his terminally ill brother. Plaintiff admits that the Lincoln application was "wrong," that he made several "honest mistakes" in it, and that "someone" committed insurance fraud when plaintiff submitted altered medical records as a part of Insured's application.

Plaintiff's own admissions defeat his claims against Lincoln, because they leave "no genuine issue of any material fact," and Lincoln "is entitled to judgment as a matter of law." *See* FED. R. CIV. P. 56(c); *Celotex*, 477 U.S. at 322. The record also leaves no genuine issue of

7

Case 5:13-cv-00315-BO   Document 114   Filed 09/16/14   Page 7 of 17

material fact as to Lincoln's entitlement to judgment on its counterclaims, as "[a]n issue is genuine only if a reasonable jury, based on the evidence, could find in favor of the non-moving party." *Anderson*, 477 U.S. at 248. Here, no reasonable jury could view the evidence of plaintiff's widespread fraud and find it to be just a big "honest mistake."

       i.   Plaintiff is liable for fraud.

In North Carolina, civil fraud consists of" "(1) False representation or concealment of a material fact, (2) reasonably calculated to deceive, (3) made with intent to deceive, (4) which does in fact deceive, (5) resulting in damage to the injured party. Additionally any reliance on the allegedly false representations must be reasonable." *Forbis v. Neal*, 649 S.E.2d 382, 387 (N.C. 2007).

Here it is undisputed that plaintiff's application contained numerous material misrepresentations and omissions, including plaintiff's statements that: (a) prior applications had been declined because of Insured's knee injury; (b) Insured was employed; (c) Insured had §40,000 per year in income; (d) Insured's phone number was plaintiff's cell phone number; (e) Dr. Van Tran examined Insured and not someone else; (f) Insured told MedEx he had a family history of "Lumbar Strain and Prostatism" instead of "Lou Gehrig's and Parkinson's"; (g) Insured's mother had an "unknown" cause of death; (h) Insured had only $100,000 in life insurance coverage; (i) Insured had no pending applications for more coverage; (j) Insured had never been diagnosed with ALS; (k) Insured had never had a medical diagnostic test performed related to his neurological condition; and (l) Insured had only seen Dr. Meltzer and Dr. Van Tran in the last five years. In inducing Lincoln to increase the face amount of coverage, plaintiff then repeated many of these misrepresentations in February and March 2010, and also stated that (m) plaintiff would immediately withdraw the other pending applications.

Lincoln was clearly deceived by plaintiff's fraud and reasonably relied on plaintiff's affirmative explanations in the application, his cover letters, and his subsequent e-mails explaining away the issues that may otherwise have caused concern. Lincoln suffered damages as a direct result, including the payment of commissions on the policy in the amount of $3,072.44 (consisting of $1,904.92 to plaintiff, and the balance to other entities in the distribution hierarchy) and the payment of costs and attorney's fees in defending against this lawsuit. The Court also grants defendant's request of special damages in the amount of $5,183.89, the amount of premiums paid and interest which Lincoln attempted to refund to plaintiff upon denial of the policy. *See PHL Variable Ins. Co. v. P. Bowie 2008 Irrevocable Trust ex rel. Baldi*, 718 F.3d 1, 7 (1st Cir. 2013) ("[T]he law would not allow [the Trust] to commit an intentional and calculated fraud upon [PHL] and walk away unscathed while the innocent party bears the financial burden of the fraud.").

        ii.        Plaintiff is liable for unfair and deceptive practices.

"In order to establish a prima facie claim for unfair trade practices, a plaintiff must show: (1) defendant committed an unfair or deceptive act or practice, (2) the action in question was in or affecting commerce, and (3) the act proximately caused injury to the plaintiff." *Dalton v. Camp*, 548 S.E.2d 704, 711 (N.C. 2001); *see also* N.C. Gen. Stat. § 75-1.1–75-1.16. "A practice is unfair if it is unethical or unscrupulous, and it is deceptive if it has a tendency to deceive. The determination as to whether an act is unfair or deceptive is a question of law for the court." *Dalton*, 548 S.E.2d at 711 (citations omitted). "Proof of fraud would necessarily constitute a violation of the prohibition against unfair and deceptive acts." *Bhatti v. Buckland*, 400 S.E.2d 440, 442 (N.C. 1991); *see also Joy v. MERSCORP, Inc.*, 935 F. Supp. 2d 848, 863 (E.D.N.C. 2013).

9

The Court has already found that Lincoln is entitled to summary judgment on its claim for fraud, and therefore it is established that plaintiff's actions constitute an "unfair or deceptive act or practice." *Bhatti*, 400 S.E.2d at 442. Further, plaintiff admits that his actions were "in or affecting commerce." *See* [DE 12 at 16; DE 6 at 17] (admitting that plaintiff was engaged in the business of acting as an independent insurance agent, which is subject to Chapter 75 and is in or affecting commerce). Finally, as discussed *supra* Part III.A.i, plaintiff's deceptive acts caused Lincoln's damages. Therefore Lincoln is entitled to summary judgment on its Chapter 75 claim.

iii. Plaintiff is liable for misrepresentation.

In North Carolina, the "tort of negligent misrepresentation occurs when (1) a party justifiably relies, (2) to his detriment, (3) on information prepared without reasonable care, (4) by one who owed the relying party a duty of care." *Brinkmann v. Barrett Kays & Assocs., P.A.*, 575 S.E.2d 40, 43–44 (N.C. App. 2003) (quotations omitted). A life insurance company relies on its independent agents' "knowledge of the facts" material to the application. *See Daughtridge v. Atl. Coast Line R. Co.*, 80 S.E. 1080, 1084 (N.C. 1914). As an independent life insurance agent for Lincoln, plaintiff owed Lincoln a duty of *uberrimae fidei*, or "utmost good faith," in preparing the application. *See id.*; *Estate of Graham v. Morrison*, 607 S.E.2d 295, 303 (N.C. App. 2005) ("[T]he agent . . . is bound to the exercise of the utmost good faith, loyalty, and honesty toward his principal or employer.").

Here, plaintiff repeatedly submitted "information prepared without reasonable care" to Lincoln during the application process, as he has admitted. Therefore, plaintiff is liable for misrepresentation in his submission of the application to Lincoln.

10

    iv.  Plaintiff is liable for breaching his producer agreement.

Here, it is not disputed that plaintiff and Lincoln entered into the "Producer Agreement" on or about February 22, 2010, which is governed by Indiana law and defined the scope of plaintiff's actions as an independent agent for Lincoln. [DE 83-16]. Under Indiana law, "the essential elements of a breach of contract claim are the existence of a contract, the defendant's breach thereof, and damages." *Auto-Owners Ins. Co. v. C&J Real Estate, Inc.*, 996 N.E.2d 803, 805 (Ind. App. 2013) (quotations omitted).

The Producer Agreement makes plaintiff liable for damages and attorney's fees resulting from "any negligent, fraudulent or unauthorized acts or omissions by" plaintiff. [DE 83-16 at ¶22(b)]. The agreement also prohibits an agent from "chang[ing] any . . . answers on . . . any application for the Policies." *Id.* at ¶4(a). Likewise, an agent may not "deliver the Policies unless the health of the Insured(s) or Annuitant(s) is substantially unchanged from the date of the application." *Id.* at ¶4(c). An agent also "agrees to abide by the terms and conditions of this Agreement, The Producer's Compensation Plan, the Market Conduct Manual, and any rules relating to the Company's business as may be published, or contained on the Company's Web site, from time to time." *Id.* at ¶7.

As discussed earlier, plaintiff engaged in numerous negligent and fraudulent acts in preparing and pursuing the Lincoln application, many of which he has admitted. Further, the policy in suit was issued on or about March 29, 2010. By that time, plaintiff knew that the Insured had been diagnosed with ALS again, by Dr. Bedlack at Duke University. By delivering the policy to Insured, when plaintiff knew that the application underlying the policy contained no mention of Insured's ALS, plaintiff breached the Producer Agreement. These breaches caused Lincoln damages in the amount of plaintiff's commissions on the policy and Lincoln's costs and

11

attorney's fees incurred in defending this lawsuit. Accordingly, summary judgment is granted in favor of Lincoln on their breach of contract claim.

        v.        Plaintiff's death benefits claim.

Plaintiff's complaint contains a single cause of action – for death benefits – couched as a breach of contract claim. [DE 1-1 at 3–4]. However, "[m]aterial misrepresentations in an application for an insurance policy may prevent recovery on the policy. *Luther v. Seawell*, 662 S.E.2d 1, 4 (N.C. App. 2008) (citing N.C. Gen. Stat. § 58-3-10). "[A] representation in an application for an insurance policy is deemed material if the knowledge or ignorance of it would naturally influence the judgment of the insurer in making the contract. . . ." *Goodwin v. Invests. Life Ins. Co. of N. Am.*, 419 S.E.2d 766, 769 (N.C. 1992) (quotation omitted). "[I]n an application for a life insurance policy, written questions and answers relating to health are deemed material as a matter of law." *Ward v. Durham Life Ins. Co.*, 381 S.E.2d 698, 702 (N.C. 1989); *see also Fountain & Herrington, Inc. v. Mut. Life Ins. Co. of N.Y.*, 55 F.2d 120, 123 (4th Cir. 1932) ("Answers made in response to questions in the application as to prior illness, consultation with physicians and applications for other insurance, where the applicant, as here, declares that they are true and offers them as an inducement to the issuance of the policy, are deemed material as a matter of law.") (citing *George Wash. Life Ins. Co. v. Am. Collapsible Box Co.*, 117 S.E. 785 (N.C. 1923)). "[I]t is well settled that a misrepresentation of a material fact, or the suppression thereof, in an application for insurance, will avoid the policy even though the assured be innocent of fraud or an intention to deceive or to wrongfully induce the assurer to act, or whether the statement be made in ignorance or good faith, or unintentionally." *Tharrington v. Sturdivant Life Ins. Co.*, 443 S.E.2d 797, 801 (N.C. App. 1994) (quotation omitted).

12

As previously discussed, plaintiff's application contained numerous misrepresentations, many of which plaintiff admitted. Those relating to Insured's health and ALS are material as a matter of law, rendering the policy voidable by Lincoln. The other misrepresentation, especially those related to the other coverage already in force and applications pending, are material because Lincoln would not have issued the policy, in the amount issued, if it had known of the other coverage and applications. Indeed, when plaintiff requested an increase in the face amount from $500,000 to $800,000, Lincoln offered the increase on the express condition that plaintiff withdraw all other pending applications and that the total coverage in force not exceed $900,000, or 20 times the state (but false) income of the Insured. [DE 84-36 at LINCOLN 3243, 3249–52]; *see also* [DE 84-43 at ¶11].

      vi.  Plaintiff's Chapter 58 claim.

"[N]o violation of [§ 58-63-15(11)] shall of itself create any cause of action in favor of any person other than the Commissioner" of Insurance. N.C. Gen. Stat. § 58-63-15(11). Plaintiff might have properly pursued this claim by claiming a violation of Chapter 75, but he failed to do so. *See Nelson v. Harford Underwriters Ins. Co.*, 630 S.E.2d 221, 231 (N.C. App. 2006) ("[A] plaintiff's remedy for violation of the unfair claim settlement practices statute is the filing of a claim pursuant to N.C.G.S. § 75-1.1, the unfair or deceptive practices statute.").

Even if plaintiff had properly pled a Chapter 58 violation, his claims would still fail. Plaintiff's claim is based on a contention that Lincoln has a general business practice of: (1) attempting to settle claims on the basis of an application which was altered without notice to, or knowledge or consent of, the insured; (2) failing to promptly provide a reasonable explanation of the basis in the insurance policy in relation to the facts or applicable law for denial of a claim; and (3) refusing to pay claims without conducting a reasonable investigation based upon all

available information. The evidence before the Court reveals that Lincoln did not alter plaintiff's application, that it investigated and responded to plaintiff's claim for death benefits within approximately three months, and that Lincoln sent plaintiff a letter summarizing some of the misrepresentations it identified in plaintiff's application. All of Lincoln's actions were lawful and did not violate Chapter 58.

      vii.  Lincoln is entitled to treble damages and attorney's fees.

Chapter 75 provides for an automatic trebling of damages upon the finding of a violation of the Chapter, i.e., the finding of an unfair or deceptive trade or practice. N.C. Gen. Stat. § 75-16. In addition:

> [T]he presiding judge may, in his discretion, allow a reasonable attorney fee to the duly licensed attorney representing the prevailing party, such attorney fee to be taxed as a part of the court costs and payable by the losing party, upon a finding by the presiding judge that: (1) The party charged with the violation has willfully engaged in the act or practice, and there was an unwarranted refusal by such party to fully resolve the matter which constitutes the basis of such suit; or (2) The party instituting the action knew, or should have known, the action was frivolous and malicious.

N.C. Gen. Stat. § 75-16.1.

Here, an award of attorney's fees is warranted under both statutory prongs. Plaintiff willfully engaged in a multi-state scheme of insurance fraud, victimizing Lincoln and others. Moreover, after Lincoln denied plaintiff's claim for death benefits, it did not initiate litigation. Having secured nearly a million dollars in life insurance payments after the death of Insured, plaintiff sought more, and initiated this suit against Lincoln. This suit as initiated by plaintiff is clearly frivolous as plaintiff sought to have this Court sanction his fraud and award him ill-gotten gains. Further, the suit compelled Lincoln to file its compulsory counterclaims for fraud and Chapter 75 violations. Despite this, Lincoln repeatedly asked plaintiff to drop his lawsuit. *See e.g.,* [DE 84-3 at 139–40]. This constitutes an "unwarranted refusal . . . to fully resolve the matter

14

which constitutes the basis of such suit" by plaintiff. N.C. Gen. Stat. § 75-16.1. Additionally, plaintiff instituted his own action under Chapter 58 for unfair claims process. Plaintiff should have known that a suit to enforce his fraud was frivolous and malicious and therefore an award of attorney's fees is justified.

Accordingly, the Court awards Lincoln $9,217.32, treble the amount of Lincoln's compensatory damages of 3,072.44, in addition to the $5,183.89 in special damages found by the Court *supra* Part III.A.i, plus Lincoln's reasonable attorney's fees spent in defending this action which Lincoln will prove by affidavit.

        B.      Plaintiff's Motion for Summary Judgment.

As the Court has granted defendant's motion for summary judgment in its entirety, plaintiff's motion must be denied. However, the Court will now briefly address several of plaintiff's arguments.

First, the "Incontestability" statute does not bar Lincoln from denying plaintiff's claim for death benefits. The contestability clause in the disputed policy reads as follows:

> We will not contest this policy after it has been in force during the Insured's lifetime for two (2) years from the Date of Issue.

[DE 96-2]. Here, it is undisputed that the "Insured's lifetime" did not extend for two years from the Date of Issue. The "Date of Issue" of the Lincoln policy was on or after February 18, 2010 and Insured died on January 15, 2012. Such contestability clauses based on the Insured's lifetime are allowed in this jurisdiction. *Taylor v. Am. Heritage Life Ins. Co.*, 448 F.2d 1375, 1377 (4th Cir. 1971). The policy's issue date was February 22, 2010, and the Insured died on January 15, 2012. Because the Insured died within two years of the issue date of the policy, the policy was not in force for two years during the lifetime of the Insured and thus ReliaStar has the right to contest it.

15

Second, Lincoln did not waive its right to contest the policy. In addition to the reasoning provided by the Court in the ReliaStar Litigation at *7, plaintiff cannot avail himself of the equitable defense of waiver due to his widespread fraud. *Worldcom, Inc. v. Boyne*, 68 F. App'x 447, 451 (4th Cir. 2003) (explaining the doctrine of unclean hands).

Finally, Lincoln is not quasi estopped from contesting the policy due to plaintiff's attempt to make a premium payment after the death of the Insured. "Quasi-estoppel only applies where a party having the right to accept or reject a transaction 'takes and retains benefits thereunder,' in which case he 'ratifies it, and cannot avoid its obligation or effect by taking a position inconsistent with it.'" ReliaStar Litigation at *9 (quoting *Carolina Medicorp, Inc. v. Bd. of Trustees of the State of N.C. Teachers' and State Employees' Comprehensive Major Med. Plan*, 456 S.E.2d 116, 120 (1995)). Here, Lincoln sent quartly premium notices to plaintiff per his request. Lincoln sent a quarterly premium notice for the policy on March 1, 2012. [DE 96-3] (identifying "Last-Bill" date of "03-01-12" as of March 14, 2012). The premium notice indicated that the payment was due by March 21, 2012. [DE 96-4]. Plaintiff notified Linocln of the death of Insured on or about March 8, 2012. [DE 83-8]. Lincoln then promptly suspended any further billing or issuance of premium notices on the policy. [DE 96-5 at 59–61]. This establishes that Lincoln has not taken and retained any benefit under the policy and has, in fact, attempted to return the premiums to plaintiff. Therefore it is not barred by quasi-estoppel from contesting the policy. *See Carolina Medicorp, Inc.*, 456 S.E.2d at 120.

## CONCLUSION

For the foregoing reasons, defendant's motions to seal are GRANTED, plaintiff's motion to seal is GRANTED IN PART and DENIED IN PART, defendant's motion to exclude is GRANTED, plaintiff's motion to exclude is DENIED, defendant's motion for summary

judgment is GRANTED and plaintiff's motion for summary judgment is DENIED. Further the Court AWARDS Lincoln $9,217.32, treble the amount of Lincoln's compensatory damages of 3,072.44, in addition to the $5,183.89 in special damages found by the Court *supra* Part III.A.i, plus Lincoln's reasonable attorney's fees spent in defending this action which Lincoln will prove by affidavit. The Clerk is DIRECTED to enter judgment accordingly and to close the file.

SO ORDERED.

This the 16 day of September, 2014.

/s/ Terrence W. Boyle
TERRENCE W. BOYLE
UNITED STATES DISTRICT JUDGE

17

Case 5:13-cv-00315-BO Document 114 Filed 09/16/14 Page 17 of 17